Please be seated. Our next case is United States v. Drummond. Mr. Kendrick. Thank you, your honors. Mr. Drummond brings two claims before this court, one related to his sentencing and one related to a motion to suppress that was brought to pretrial. I'd like to start with the Armed Career Criminal Act. Of course, if the court wants me to go in a different direction, I'll happily defer to that. Essentially, whether CDV is a crime of violence in South Carolina is governed by whether or not it's an assault, the South Carolina courts view it. Our position is that the question has been answered by both South Carolina appellate court opinions and by this court in Hemingway in a published opinion, where they say that the amount of force involved in a South Carolina assault doesn't meet the Johnson level of force required for the Armed Career Criminal Act. In Chisholm, an unpublished opinion from this court in 2014, the court started down a road that the government and the district courts have sort of used to say criminal domestic violence is a crime of violence for Armed Career Criminal Act purposes. But even though they seem to recognize that assault would not be, so what I'd ask this court to do is consider the fact that Chisholm, unpublished, not precedent, is a marked departure from what the court said in Hemingway. In Hemingway, when they were considering assault and battery of a high and aggravated nature, the first element of that crime is the infliction of a violent injury. They never even considered that case because all parties and the court agreed under the force clause that didn't meet the Johnson force element. So are you waving your standing and probable cause arguments? I'm not, Your Honor, and I'm happy to discuss those instead of the Armed Career Criminal Act. Well, you ought to probably go to, I mean, you can take it whatever way you want to, but obviously if he has standing and there's no probable cause, then there's limited value in discussing the sentencing. That certainly makes sense, Your Honor. So I think that under the Fourth Amendment, the argument we made in the lower court for standing, our argument is that Mr. Drummond is present in a hotel room. He is a social guest. He is invited by the person who is sort of in control of those premises. So he certainly has standing to raise a Fourth Amendment claim. I won't belabor the abandonment point because I think Your Honor's just talked about that, and that was an issue the government brought up in their response brief. My simple response to that is around page 187 of the supplemental joint appendix. It's very clear that there was no unequivocal abandonment of this bag. I think he said within a very short period of time, it's mine, it's not mine, it's mine. I think that the more concerning issue here is the probable cause for the warrant. If you look at it under any view, but the totality of the circumstances, there's simply not enough there to argue that there is probable cause that a crime is being committed in this room. And as we went through the totality of the circumstances with the district court and in the testimony, what it ultimately came down to was whether this small hypodermic needle cap that they found in the back bathroom was evidence of some crime. And it's our position that it simply isn't, and there wasn't any evidence that they offered to say that it was. So you can kind of tell as we go. If I've got the right case, this is one where there were a whole bunch of people in the room in the middle of the day, and the officers are there, and they say there's no one in the restroom. The officer goes in, and there's somebody passed out in the restroom. That's where they find this hypodermic cap. The officer asks all the people in the room, the insurers, do you have any medical condition that will necessitate it? I mean, you've got more facts than what you've alluded to here in terms of probable cause. Right, and what we do is, and if we look at those facts sort of, and I get that we have to look at the totality of circumstances, but I also think it's logical we have to look at each one of them and see what it adds to the circumstances. So we have the police arriving in this room, and there are, you're correct, I think there are seven or eight people that's in that range that are in this hotel room in the middle of the day. By itself, that's not evidence of any crime. They ask if anyone else is here. The person says no, and they find a young lady passed out in the bathroom. Again, not evidence of any crime. And then finally, what they say... Isn't it right to have normal, when you say is anybody in the bathroom, and they say no, and then you open the door, and there's the woman there? Isn't that, certainly, doesn't that indicate that something's going on, something wrong is going on, and then you see the hypodermic gap? Let me answer your question two ways. So when you say is it abnormal, I think that is probably in candor to the court for us, yes, for the folks that often come through my office, that they don't tell the police all the facts. And I don't think there's anything in any law that requires them to. Yeah, to be honest. No. No, you're right. I mean, I... It's not in all circumstances. No, I mean, I think that that's, you know, it's certainly a... We struggle with it, but... That's a tendency of human behavior that gives us all employment. It does indeed, Your Honor, but I think at the same point, there's no real requirement that I have to tell the police the truth. And then if I have not told them the truth, they now have probable cause, especially in light of the fact that we're talking about a circumstance that isn't really criminal one way or the other. So if he had said, yeah, there's a girl passed out in the bathroom, that by itself still doesn't add to the idea of any illegal activity or a crime where we would need to go and search for further evidence. You know, the hypodermic needle, every case that I think the government cited and that we discussed in our brief talks about drug paraphernalia as support for probable cause, but I can't find any case where they take something that is, we'll say drug paraphernalia when used for illegal drugs, but it's not like a gun or a marijuana pipe or a bong or something that we know you're up to something if you have it. These are things that don't by themselves lend to any criminal activity. So in light of, you know, if you were to find scales in a room, those are often cited as drug paraphernalia in cases, but by themselves they don't lend to any particular probable cause to fight drugs. It would need to be something else. In every case that they all talk about, and most of them are out of circuit. I think the strongest case they found was a military court of appeals case, which I would argue probably is questionable precedent, but that was where they found the hypodermic needles, but I think at that point they also found the needle that went along with it, and the person was in a car, passed out, so I think there was a little bit more indication that they would search. It was also an automobile, but in this case you're asking for a search warrant. You're telling the judge, as you were required, here's what I have, and based on this I have a probable cause to believe I'm going to find evidence of a crime, and none of that, I mean this is very similar to the Wilhelm case, which is the bare bones affidavit, where they talk about the fact that in that case they had very little, and in this case they still have very little. None of the information that the government cites in its brief can keep adding to the totality of the circumstances, so the confidential informant that they talk about, that wasn't presented to the magistrate. There was nothing about that presented, so that's a nullity as far as considering probable cause. The idea of the folks in the hotel room, I left the brief at my table, but I don't think they actually talked about the number of people, but even if they did, again that doesn't, I mean a hotel room full of people is not an indication of any crime. Then they add the line to the police, which I would argue simply isn't ever going to be probable cause of a crime, especially when you're lying about a relatively innocent factor. You're not lying about possession of something that could lead to a crime. And then you get to the last step, which was this small hypodermic needle cap, which wasn't presented in evidence, it wasn't brought into court. I don't know where it is. I asked the officer in the motion to suppress, and she said, I assume it'll be presented, but it never was. So you really have the very barest of information to support probable cause. Nothing here supported the idea of drug activity. And I think that at that point, that it really ends the analysis. I mean if we were to go a little bit deeper into the standing question, all of the cases the government relies on to argue that a hotel guest wouldn't have standing, actually aren't discussing that issue. If you look at Minnesota v. Carter, the Rackus case, cited by Byrd, which is a very new Supreme Court case from right around the time we were working on this case, what they're actually talking about is that just the fact that you have permission to be there wouldn't be enough to trigger standing, but they keep repeating in those cases the idea of the fleeting business relationship. So they're talking more about someone who happens to be passing through for some commercial purpose, which was not the issue here. We offered to have our client testify multiple times, and I told the judge what he was going to testify to, and I think that we are established on the fact that he was a social guest and had permission to be here. And from a standing point, he certainly had a right to privacy in the property that he carried in with him, and had standing to bring the Fourth Amendment claim, and certainly makes a good point that under the probable cause affidavit, there's not enough facts to warrant a search. If the court has no further questions, I've covered that. I think the point I made on the sentencing issue I think is very clear. Hemingway says a violent injury is not the Johnson Force. State v. LaCoste from the South Carolina Court of Appeals clearly says that CDV and assault are similar crimes. CDV is a greater crime than assault, but the added element is the household member. So it is not any type of additional activity required. So Chisholm is quite simply just a departure from how South Carolina and how this court had viewed an assault. So you would say Chisholm is wrong? I would, Your Honor. And I know that you were on that panel, but I think that Chisholm has essentially, it was right after Hemingway was decided, and I think what Chisholm seems to do that the rest of the cases that follow that line do, is they are adding something to the South Carolina crime of assault that isn't there. So CDV adds one element to the South Carolina crime of assault, and that is the household membership. So assault under State v. LaCoste, and I think recognized in Chisholm, is an unlawful attempt or an offer to commit violent injury with the present ability to complete by battery, is what they say about assault. It's my position that in the CDV, the only difference would be that it reasonably places someone in fear of peril, but the logical understanding of that is the peril of the battery being completed. So because an assault can be committed non-violently, and this Court has held that crystal clear, then CDV doesn't do anything different. So we have this sort of line of unpublished opinions where we're interpreting assault in South Carolina as a violent crime, when neither the South Carolina courts interpret it that way, nor does any published opinion from this Court interpret it that way. So without any further questions, sit down. Thank you, Your Honor. Thank you very much. Ms. Schoen? Yes, Your Honors. This case arises out of a conviction and sentence of Mr. Drummond, a serial criminal domestic violence perpetrator, for possession of a firearm. There are three issues that are important before the Court. First is whether Mr. Drummond had standing to challenge the search of the bag based off of his relationship to the hotel room. That's the only claim was the basis for standing at the District Court below. Second, whether there's probable cause for the search. And third, the sentencing matter, whether criminal domestic violence third and CDV hand are crimes of violence under the ACCA. As to the first matter of standing in the hotel room, the evidence presented at the hearing was that Mr. Drummond was an invited guest of a person, Mr. Finley. Mr. Finley was not the registered guest in the room. Here, it was presented that he also stated that he was a, I believe, evidence regarding Mr. Finley had possession of the room. But below what was stated was the invited guest of Finley who was not the registered guest in the room and he was there temporarily. Carter establishes that overnight guests of homes may have standing, but individuals who are merely present with the consent of the householder may not claim the protections of the Fourth Amendment. Legitimate presence of a place searched would create too broad a gauge for measurement of the Fourth Amendment, according to Rackus. This case is far also from Stoner in which guests living in a hotel room or registered guests have the same rights of a person who is an apartment tenant. This case, Mr. Drummond has not established that he was even an overnight guest in a hotel room, much less any ability to control or to exclude others from the property. A talisman of the rights under the Fourth Amendment when one considers the recent opinion of Byrd, which was cited recently. As stated before, the issue of the proprietary interest of the bag was not raised below. There was no indication at the hearing below that Mr. Drummond claimed the bag at that hearing. He rather stated that he simply had personal property in that room but never stated that that bag was his. The facts that came about during the trial on page 187 were that Drummond initially stated he had the bag, then he recanted his former statement saying the bag was not his. When the officer pushed on that, Drummond gave an incoherent statement. It's not that he reclaimed the bag. His response to the further investigation of the defendant was incoherent. So the last statement on the matter was that the bag was not his. The final issue is whether CDV III and CDV Han are crimes of violence. I would ask the court to give a close examination to the case of Lacoste. It was actually cited by my opposing party. However, it clearly demonstrates that CDV requires an act of violence. The brief of my opposing party stated that it was simply the fact that it was an individual who was a member of the household is what makes CDV greater than the lesser included of assault. This is incorrect. A close examination of Lacoste shows there are two facts that make CDV greater than assault. First, it is the violence that is important. If you look at what's captioned as footnotes… I assume your view would be that the Chisholm decision was correct. That's correct, Your Honor. So if we were to adopt the reasoning of Chisholm, that would settle it? Yes, Your Honor. And the government would ask that the court… And you're going to tell us why you think Chisholm is correct. Yes, I am. Chisholm and Young and Holland and Lewis are all decisions by this court. They're all unpublished. The court cited in Lacoste Arthur B. Aiken, which states the essential purpose behind the statute is to protect against the harm and violence from members of an individual's household. Grace states that criminal domestic violence charge is an act of violence towards another. Similarly, in a concurring opinion by Justice Toll in State View, Right 349 SC 310, Justice Toll states, the CDB statute was designed to address violence in the household. When one looks at Lacoste, it may appear that by the last paragraph where it's talking about the person of another being a lesser included portion of the assault from criminal domestic violence, when one looks at one paragraph, one can see that the Supreme Court additionally distinguished the crime of criminal domestic violence from assault because of the violent nature of assault, of a criminal domestic violence. Specifically, the court says that it looks like violent injury is a part of assault. But when one looks at the history around assault and Abhan, it's not violent. In the middle of that, it says, however, one looks, it says, further, the essential purpose of 1625-20 of the Criminal Domestic Violence Act is to protect against harm and violence from members of an individual's household. These are two factors. So each one of the times the court states the purpose of the criminal domestic violence is, one, to protect against violence, and that's the physical harm component of 1625-20A, and then two, that it's a specifically member of the household. Now, in Lacoste, the court found it was appropriate that simple assault and battery was charged, even though the court found that spouse fits within the definition of a household member regardless of whether the parties are currently cohabitating. In Lacoste, that was the evidence. This is the defendant's wife. There was no question of whether or not this woman was a member of the household, so that was not the basis on which the court found that simple assault could be charged as a lesser included. It was the fact that you could commit assault by touching in a rude, angry manner without justification that was the lesser included portion of the possible way that a jury could have interpreted the facts of Lacoste. In that case, the victim and the defendant were seen, where the defendant punched and hit the victim in a parking lot, but there was potentially other testimony that was not allowed to be, or other hearsay evidence that wasn't allowed to be brought out that the wife may have also been hitting the defendant. So the issue there was could the jury have looked at those facts and found that violence was not part of the offense that the defendant committed, because consistently it referred to the victim as Mrs. Lacoste, a member of the household. That was not the lesser included. Ms. Shay, I'm sorry to interrupt you, and I've got a question for you, but I'm going to get you to go back to this question standing. Yes. Was this issue presented at the suppression hearing? Was testimony about claiming ownership or not claiming ownership presented at the suppression hearing? And did the district court rule on the standing question? It was not, Your Honor. And regarding the bag, there was no testimony regarding the ownership of the bag, and I would argue that they should not be able to claim that as a basis here either. Once Fourth Amendment rights are specific to the right to be secured against unreasonable searches and seizures in his own person, house, or papers, the rights are statements that are held. I'm sorry. Those rights are specific. You want us to rule on it based on testimony at trial? No, Your Honor. That came out after the suppression hearing? No, Your Honor. I would simply ask that the defense has not claimed standing in that bag as a matter of itself. So I would ask that the court only rule on the issue of the hotel guest because the defense did not claim that they had a proprietary interest in that bag such that we did not present evidence on whether it was disclaimed or not. Well, in other words, you did or did not argue abandonment? I did not argue abandonment because the issue, the defendant did not claim that his standing was based in a proprietary interest in that bag. So the government, it is the defendant's burden to prove that he had a reasonable expectation of privacy in a specific place. The place he claimed that proprietary interest in, that reasonable expectation of privacy below, was in the hotel room. He did not claim his interest was in the bag. Therefore, the government did not put forward evidence to establish that it was disclaimed. So your bottom line argument goes to does the defendant have standing with regard to the room and that the bag doesn't make a difference? That if the issue had been raised of the bag, the government would have presented evidence, but the only interest the defendant claimed... Well, if the defendant doesn't have standing with regard to the search of the room, doesn't that... Yes. Yes, Your Honor. So why don't you tell us very briefly about why Chisholm is correct in your view? Chisholm is correct because CDV requires violence. It is a statute, and it is a long statute. It is a specific statute that is aimed to protect against violence of individuals in one's household. Assault and battery has a very long and separate history. Now, assault can be a lesser included of criminal domestic violence because you can do less of the elements than CDV and be guilty of it. The ways that you do the elements of assault that are less than CDV are, one, actually perpetrating violence, physical harm against the victim. That is a requirement by the statute, by the clear language of the statute, and that is what was found in Lacoste, and that is what consistently the Supreme Court of South Carolina has said is the purpose behind CDV. Additionally, the court has held that CDV is not simply assault. Well, it's not a CDV plus ab-han. CDV-han is its own creature. Specifically, Becker v. State, that's 2010 WL10097746, this is an unpublished opinion by the South Carolina Supreme Court, stated that overturned a conviction where the judge charged CDV plus some elements of ab-han. The court found that that was incorrect because CDV-han has specific statutory requirements where ab-han has a whole host of other things that are not covered by CDV-han, and some of those would include things that aren't violent. Now, if CDV itself is a violent crime, which it has consistently been in South Carolina, then one would not even need to reach the issue of whether CDV-han, its own statutory, its own statute is also a crime of violence, because the way CDV-han statute is written is it says a person who commits 162520. So, it doesn't say a person who commits assault on a member of a household. It's a person who violates this specific statute. So, that's CDV-han. This court has addressed extensively in Lewis and in Chisholm the issue of an offer. Well, there is no case law on CDV and offers because there is no case law. While we look to other areas where the word offer has been used, the word offer was used in an assault context, a lesser included, as more than mere words, but rather an offer is, according to the statute, an offer to cause physical harm with the apparent and present ability under the circumstances, reasonably creating a fear of imminent peril. The court has analyzed both the Oxford and Black's Law Dictionary to show that a threat is less than that. A threat is to hold out or offer some injury by way of a threat to declare one's intention of infliction. This says nothing about the ability to actually do that. So, an offer under the CDV and CDV-han statute is even more than the ACCA definition of a violent felony requires. And the same is true of Black's Law Dictionary, which the court analyzed earlier. A review of the cases of CDV show that CDV in South Carolina is prosecuted based on causing physical harm. Underlying the case in Chisholm, the defendant choked a victim around the neck with hands, causing her to seek medical attention. In State v. Galston, a CDV hand, the defendant beat the victim to a point where her face was so swollen that her son did not recognize her, and she had difficulty breathing. Underlying Young, the defendant hit a man, a person with whom he was living with, on the side, fracturing or at least bruising the woman's ribs. In Holland, the defendant rammed his car into a car that was being driven by his pregnant girlfriend. In Caesar, the defendant knocked the victim unconscious, punching her. She was treated in the hospital for cuts to her face and a fractured cheekbone. In Rogers, the wife stated that the husband punched her in the side and stomach, smashed her face into the windshield, and smacked her in the face repeatedly. In State v. Wright, CDV hand, the defendant beat and kicked his wife so severely that she had fractured ribs and her spleen had to be removed. In McLeod, the defendant struck the victim in the face with closed fists and hit her in the head, pulling her hair, scratching her neck, and she had to receive medical attention. In Becker, the victim stated that the defendant had hit her in the head with an iron bar, and the officer testified that the head injuries were consistent with someone being hit in the head with a metal bar. So, Ms. Sean, we've read your brief here in this case. Is there anything else that you feel like you haven't covered that you'd like to tell us about? No, Your Honor. Okay. Well, thank you very much, and now we'll hear from Mr. Kendrick, who's got some rebuttal time. Thank you, Your Honor. There's two things that I want to respond to are the standing argument and then the concept of violence. As far as standing goes, if you look at page nine of the joint appendix, that is where the district court is calling the case and calling the motion to suppress, and I explained the procedural way it came about. I filed a motion to suppress, asking that the evidence be suppressed because there was no probable cause for the warrant. The government raised a challenge to standing, which I think then arguably put the burden back on me, which is you read through the joint appendix, you will see me expressing some concern that I'm happy to put my client up on the stand. Maybe that's the wrong way to say it. I am willing to put my client up on the stand to establish standing if that is going to be the crux of the case. In other words, if the district court is going to say, I would have considered your Fourth Amendment argument, but you didn't let your client testify. So I offered the proffer, and what I was trying to do in as many ways as possible was make sure I would never end up in a situation like this where you might say, you never really preserved the issue. So it was the government who had raised the idea that the relationship to the hotel room was not enough for standing. I never brought up the idea of the bag being abandoned or not, number one, because I don't think it was, but number two, because specifically that wasn't a challenge to the standing. If you were to adopt that reasoning, then in any Fourth Amendment case, we would need to consider all the world of standing challenges and make sure that we address them one by one, even when the government had not addressed them. So I think that that issue doesn't control this case. I think the relationship to the hotel rooms was important. And in all of those cases, again, when they talk about legitimate presence creating too broad of a test, that's quite simply, they talk about pizza man, postman, a delivery person, a FedEx person. I mean, any of those people who walked onto property to conduct business would then have standing to assert Fourth Amendment rights in that home. Now as an additional factor, they are also talking about how when that happens, what if someone said, well, I'm going to take standing in the basement of this house that I've really never been in for other than a fleeting business transaction. So those cases shouldn't control the relationship to a hotel room, which is much smaller. Client goes in, he's an invited social guest. All the factors that the Supreme Court has historically said, we will let you assert a right to privacy. And we did bring up that he was asserting the right to privacy in his person. I think at one point we argued he would have better protection had he been walking down the street. And that doesn't seem to make sense. So he's, they may have a better argument if he asserted standing to suppress something that was found on the other side of the room or that he could have no relationship to. But in this case, I think we certainly meet the definition of standing. For the final point, the problem with adopting CHISM is number one, you can't. CHISM is directly at odds with Hemingway. Hemingway talks about Abhan and says at page 22, the elements of Abhan are the unlawful act of violent injury to another. Under the government's argument, then that would mean that Hemingway was incorrectly decided. But that is a published opinion, so it can't be overturned unless it's by the Supreme Court or en banc. The Supreme Court obviously would agree with that. One of the cases we didn't really discuss because I think it takes place in such a different context, but Castleman talks about this difference between violent injury in the context of domestic violence as opposed to violent force as Johnson uses it as a requirement for armed criminal. And the difference is sharp. In other words, in domestic violence, things, I think the exact quote, or one of the quotes is things that we wouldn't really consider that violent in the context of a home or marriage certainly can create a domestic violence situation which we should be concerned about. So there is no question that violence is not, it's Johnson's physical force that matters. And that's what Hemingway said. The only case I found that I'll be happy to send to the court as a 28-J letter, because I just found it last night, is State v. Means from 2006-367 SC-374. It's a South Carolina case. It doesn't talk about the facts of a criminal domestic violence case, but it has an indictment. And the indictment says that the person has committed an act of violence on, and I think it names the victim or says a household member. The Supreme Court didn't have any problem with the way the indictment was written, and that was actually a case about how the indictment was amended. So, again, that is the identical language that Hemingway in a published opinion from this court said in Abhan does not meet the Johnson force clause. That is critically important because if you were to adopt the reasoning of Chisholm, if it's unpublished, it just creates now five cases that the government will cite. But if it's published, you will essentially have two inter-circuit split cases because Hemingway doesn't allow that definition of violence to be used. So I think that the issue is very simple, that a criminal domestic violence in South Carolina can be committed in a nonviolent manner. I don't have a case that says that, but I think that is not standard. Under Duenas-Alvarez, I have to show a realistic probability. To hold me to say you have to point to a prior South Carolina appellate opinion where it happened would be saying that I need to show a historical proven certainty, which that is not what the Supreme Court said. They simply said, could it happen? And under these cases that we cite in the brief, LaCoste and other cases, yes, you could commit what we consider an assault against a household member, and I think the law is clear. You could commit an act of violence against a household member. That would constitute a CDD conviction. It could be committed nonviolently, and that ends the analysis as far as Hemingway and the Supreme Court are concerned with what we look at as a categorical act of violence. If there's no other questions, thank you very much. Thank you, Mr. Kendrick. I do note that you're court-appointed, and the court wishes to express its appreciation to you for undertaking representation of your client in this case on that basis. Thank you. We'll come down and recounsel and move on to our last case. Please rise.
judges: G. Steven Agee, Henry F. Floyd, William B. Traxler Jr.